# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| LUKAS GOODYEAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | Case No.:<br><br>JUDGE:<br><br><br>**COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Lukas Goodyear, individually and on behalf of the other members of the below-defined class, hereby alleges against Defendant Delta Air Lines, Inc., upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## NATURE OF CASE

1.  Delta Air Lines, Inc. ("Delta") allows ground employees, including Plaintiff Lukas Goodyear, to swap shifts with colleagues.

2.  Delta's human resources policies describe swaps as a benefit designed to "provide front-line employees with increased flexibility."

3.  Delta's pay system, however, subtly penalizes employees for swapping

shifts.

4. When Delta employees swap shifts and work extra shifts during the swap period, they are denied overtime pay.

5. As described in more detail below, this failure to pay overtime rates is a breach of Delta's contractual promise to pay overtime for time that is worked in excess of scheduled, defined, hours during a work period.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because (a) Plaintiff is a member of the proposed class, which consists of at least 100 members; (b) members of the proposed class are citizens of states other than Georgia and Delta is a Georgia citizen; and (c) the amount-in-controversy exceeds the sum of $5 million exclusive of interest and costs.

7. Members of the proposed class include, without limitation, airport customer service employees who work at airport locations across the United States, reservation and sales representatives who perform customer service duties from call center locations across the United States, and tower coordinators who work at Delta's eight hubs across the United States.

8. There are tens of thousands of potential members of the proposed class and Delta's failure to pay overtime, as alleged herein, has been ongoing for years. The amount-in-controversy thus easily exceeds the sum of $5 million.

9. Venue is proper in this Court because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and Delta is subject to personal jurisdiction here.

## PARTIES

10. Plaintiff Goodyear is and was domiciled at 152 Westminster Way in Newnan, Georgia, and was a Georgia citizen at all times relevant to this lawsuit.

11. Delta Air Lines, Inc. is and was, at all times relevant to this lawsuit, a corporation incorporated in Delaware with its principal place of business at 1030 Delta Boulevard in Atlanta, Georgia.

## FACTUAL ALLEGATIONS

**A.    The Overtime Contract**

12. For Mr. Goodyear and other members of the proposed class, availability and entitlement to overtime pay is and has been governed by a document entitled "Hours of Work, Overtime and Shift Differential (Ground, Noncontract Employees.)" This document, hereinafter referred to as the Overtime Contract, is attached hereto as Exhibit A.

13. Delta treats Mr. Goodyear and other members of the proposed class as exempt from the overtime requirements of the Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA").

14. Although Delta does not pay Mr. Goodyear and other members of the

3

proposed class overtime pursuant to the FLSA, the Overtime Contract constitutes a contractual promise to pay pursuant to its terms.

15. Delta unilaterally imposed the Overtime Contract on Plaintiff and other members of the proposed class, who accepted the Overtime Contract through their continued employment with Delta.

16. The Overtime Contract's stated purpose is to "define[] Delta's work period, meal period, overtime and shift differential practices to ensure uniform administration of [Delta's] policies." Exhibit A at 1.

17. Under the Overtime Contract, Plaintiff and other members of the proposed class are entitled to receive "[r]egular overtime" at the rate of "one and one-half times the regular hourly rate[.]" and "[d]ouble time… at two times the regular hourly rate." Exhibit A at 11.

18. The Overtime Contract defines what constitutes overtime for employees on a "Regular Schedule" and for employees on an "Irregular Schedule." For each, overtime is generally defined as time that is worked in excess of scheduled, defined, hours during a work period.

19. Employees on a regular schedule are entitled to weekly overtime for all "time actually worked in excess of 40 hours (exclusive of daily overtime) during any work week." Exhibit A at 7. Furthermore, "scheduled time not actually worked within a week will count as time worked for purposes of calculating overtime." *Id.*

4

20. Employees on a regular schedule are entitled to compensation at the rate of one and one-half times the regular hourly rate for the first eight hours of weekly overtime, and two times the regular hourly rate for all hours over the first eight hours worked on the first regular day off ("RDO"). Exhibit A at 8.

21. Employees on an irregular schedule, are entitled to weekly overtime for "the time required to be worked on scheduled days off, provided the scheduled days have been worked during the preceding work period." Exhibit A at 12.

22. Employees on an irregular schedule, are entitled to compensation at the rate of one and one-half times the regular hourly rate for the first eight hours worked over the normal irregular shift; and two times the regular hourly rate for all additional hours over the first eight hours of weekly overtime. If any employee on an irregular schedule works overtime hours on their first RDO, he is entitled, pursuant to the Overtime Contract, to compensation at the double time rate for all hours on the 2nd, 3rd or 4th RDO. Exhibit A at 11-12.

**B.   Swaps**

23. The Overtime Contract states that "[a] full-time work schedule includes 2,080 scheduled working hours in a year." Exhibit A at 1.

24. Both employees on a regular schedule, and those on an irregular schedule, can meet this definition of full-time.

25. Delta and the Overtime Contract expressly allow for "swaps."

26. Swaps are when employees trade scheduled work shifts with one another.

27. A swapped shift neither adds nor takes away from an employee's total scheduled hours for the year—it just moves them around.

28. Thus, when an employee swaps shifts, Delta still receives the same amount of labor from the employee as it would have if the employee did not swap shifts.

29. When an employee "swaps off" of a scheduled shift (*i.e.*, a colleague works the employee's scheduled shift), that scheduled shift is still worked. Delta receives employee labor for that specific shift.

30. Under the Overtime Contract, swaps do not count towards overtime thresholds. Exhibit A at 4. Thus, when an employee "swaps on" (*i.e.* he works a colleague's scheduled shift), Delta does not pay that employee any overtime as a result of the swap.

31. To be clear, even if an employee works more hours or more days than he was scheduled to work during a work period, if that surplus is only the result of swapping on, Delta does not pay overtime for that extra time.

32. This restriction makes some sense because, as explained above, if overtime is defined as work performed *in excess of* one's scheduled hours, then a swapped shift, definitionally, is not an overtime shift, as a swapped shift is merely a

reallocated scheduled shift.

33. The breach of contract occurs when employees "swap off" (*i.e.* a colleague works an employee's scheduled shift).

34. When an employee works more hours or more days than he was scheduled to work during a "swap off" period, Delta does not pay overtime for that extra time.

35. If an employee swaps off, but then adds hours or days or shifts during the same work period, he has to make up the swapped off time before Delta will pay overtime for that work period.

36. Thus, for the purposes of calculating overtime, Delta treats the swapped off shift as unpaid time off despite the fact that Delta receives employee labor for the swapped off shift from the colleague who swaps on.

37. For employees on a regular schedule: In work periods in which they swap off and a colleague works their scheduled shift, and they then pick up work on scheduled days off, Delta fails to pay overtime even though they have actually worked time in excess of their 40 scheduled hours. *See* Exhibit A at 7. This is a breach of contract.

38. For employees on an irregular schedule: In work periods in which an employee swaps off and a colleague works their scheduled shift, and the employee then picks up work on scheduled time off, Delta fails to pay overtime for the

scheduled time off even though the Overtime Contract specifically states that employees are entitled to overtime for "the time required to be worked on scheduled days off, provided the scheduled days *have been worked* during the preceding work period." Ex. A at 12 (emphasis added). This is a breach of contract.

39. The use of the passive voice in the language of the Overtime Contract makes clear that in calculating overtime eligibility for employees, what matters is whether an employee's scheduled hours in a given work period *were worked*, not whether they were the one working them.

**C.  Mr. Goodyear Was Denied Overtime Pay That Was Promised To Him By the Overtime Contract**

40. Mr. Goodyear is a Delta employee, working as a Senior Coordinator, on an irregular schedule.

41. Mr. Goodyear was scheduled to be off work on September 9, 2022.

42. However, Mr. Goodyear swapped shifts with another employee, Patrick Slaughter, such that Mr. Goodyear worked Mr. Slaughter's twelve-hour shift on September 9, 2022.

43. Due to this swap-on, for the work period of September 3, 2022 to September 16, 2022, encompassing September 9, 2022, Mr. Goodyear worked twelve hours more than his regularly scheduled hours because of the swap with Mr. Slaughter.

44. Mr. Goodyear was not paid overtime for those twelve additional hours;

8

he was paid at his regular hourly rate.

45. So far, this is all well and good. The reason Mr. Goodyear did not get paid overtime for those twelve hours on September 9 was because, even though he technically worked more than his regularly scheduled hours in a given week, the surplus was only due to his swap with Mr. Slaughter, and under the Overtime Contract, swaps cannot place employees in an overtime eligible situation.

46. The problem is on the back end of this transaction.

47. On October 18, 2022, during the work period extending from October 15, 2022, to October 28, 2022, Mr. Goodyear and Mr. Slaughter closed the loop on their swap, with Mr. Slaughter working one of Mr. Goodyear's regularly scheduled shifts.

48. On October 21, 2022, during that same work period, Mr. Goodyear picked up an additional shift, working twelve hours of work in addition to his regularly scheduled hours.

49. But when Mr. Goodyear got his paycheck, *even though all his scheduled shifts and scheduled days had been worked for the October 15-October 28 work period*, Delta did not pay him overtime for the twelve additional hours that he worked on October 21, 2022. Instead, they paid him straight time.

50. What occurred was a breach of the Overtime Contract, as Mr. Goodyear was not paid overtime for the time he worked on a scheduled day off, despite all his

9

"scheduled days hav[ing] been worked" during the pay period.

51.     Pursuant to the Overtime Contract, Mr. Goodyear should have been paid eight hours of overtime pay and four hours of double time pay for his twelve hour shift on October 21, 2022.

52.     Mr. Goodyear is just one of thousands of Delta employees to have seen the size of their paychecks diminished by this subtle practice.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and, and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

54.     Plaintiff seeks to represent a class (the "Class") defined as:

> All current and former Delta employees who were governed by the Overtime Contract and were not paid overtime rates for work performed during scheduled time off during work periods in which they swapped off some or all of their scheduled hours

55.     Excluded from the Class is Delta and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

56.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of

Civil Procedure.

57. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are tens of thousands of Class members, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Delta's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

58. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

  a. whether the Overtime Contract entitles Plaintiff and the Class members to overtime rates for work performed during scheduled time off during work periods in which they swapped off some or all of their scheduled hours, but still exceeded the contractual overtime threshold;

  b. whether Delta breached its contracts with Plaintiff and the other Class members; and

11

  c. the amount and nature of relief to be awarded to Plaintiff and the other Class members.

59. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the other Class members were all similarly affected by Delta's failure to pay overtime rates during work periods in which they swapped shifts. Plaintiff's claims are based upon the same legal theories as those of the other Class members. Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Delta engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members

60. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Class members who he seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to include sales tax, title transfer fees, and tag transfer fees in total loss situations, and Plaintiff intends to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

61.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  Delta has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

62.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Delta, so it would be impracticable for the Class members to individually seek redress for Delta's wrongful conduct.  Even if the Class members could afford litigation the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I – BREACH OF CONTRACT

63.     Plaintiff Goodyear incorporates by reference each allegation set forth

in paragraphs 1-62.

64. Plaintiff brings this claim individually and on behalf of the other Class members.

65. Plaintiff and each of the other Class members are or were Delta employees whose pay was governed by the Overtime Contract described in this Complaint.

66. Plaintiff and each of the other Class members engaged in swaps, as described in this Complaint.

67. When Plaintiff and each of the other Class members swapped off, as described in this complaint, and then worked days or hours in addition to their regularly scheduled shifts during the same work period in which they swapped off, Delta did not pay them overtime rates for any additional work that was less than or equal to the amount of time that they swapped off.

68. Delta's failure to do so was in breach of the Overtime Contract because Delta promised to pay overtime rates for time that is worked in excess of scheduled, defined, hours during a work period, as described above.

69. As a result of Delta's contractual breaches, Plaintiff and each of the other Class members have been damaged, and are entitled under the Overtime Contract to sums amounting to the overtime pay, including double pay, owed, as well as costs, pre-judgment and post-judgment interest, injunctive relief, and other

relief as appropriate.

## COUNT II – UNJUST ENRICHMENT

70. Plaintiff Goodyear incorporates by reference each allegation set forth in paragraphs 1-62.

71. Plaintiff brings this claim individually and on behalf of the other Class members and in the alternative to COUNT I.

72. In work periods in which they swap off and a colleague works their scheduled shift, and they then pick up work during scheduled time off, Delta fails to pay overtime even though the employee's scheduled time has been worked and Delta has received employee labor for the entirety of that scheduled time.

73. Delta has no principled reason not to compensate employees for the aforementioned overtime, simply because they swapped a shift.

74. By failing to pay overtime in these situations, while enjoying the benefits of Plaintiff and the other Class members working overtime, Delta unjustly enriches itself at the expense of Plaintiff and the other Class members.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Goodyear, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in his favor and against Defendant Delta Air Lines, Inc. as follows:

a. An order certifying the proposed Class, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Class Counsel;

b. An award of compensatory damages, and all other available damages, for Plaintiff and the other Class members, as well as pre- and post- judgment interests on any amounts awarded;

c. An order enjoining Delta from continuing the illegal practices alleged herein, and for other injunctive relief as is proven appropriate in this matter;

d. An award of attorney's fees, expenses, and costs of suit as appropriate pursuant to applicable law

e. An order providing such other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 12, 2023                    Respectfully submitted,

/s/ *Anna Claire Skinner*
Anna Claire Skinner (Bar No. 797021)
Adam J. Levitt*
Daniel R. Ferri*
Laura E. Reasons*
Jeremy Levine-Drizin*
**DICELLO LEVITT LLP**
Ten North Dearborn Street
Sixth Floor
Chicago, Illinois  60602

Case 1:23-cv-05712-TWT   Document 1   Filed 12/12/23   Page 17 of 17

17

Telephone: 312-214-7900
askinner@dicellolevitt.com
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
lreasons@dicellolevitt.com
jlevinedrizin@dicellolevitt.com

***Counsel for Plaintiff
and the Proposed Class***

*\*Motions for admission pro hac vice to be filed.*