**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| LUKAS GOODYEAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | Civil Action No. 1:23-cv-05712-TWT |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendant Delta Air Lines, Inc. ("Delta") hereby moves to dismiss Plaintiff's Complaint in its entirety under Rule 12(b)(6) for failure to state a claim. Plaintiff alleges breach of contract and unjust enrichment on the basis of Delta's overtime policy manual, asserting that he is entitled to overtime pay for a shift worked by someone else. He is wrong on several levels.

First, Plaintiff fails to plead the existence of a contract; on its face, the document Plaintiff attaches to the Complaint bears none of the hallmarks of an enforceable agreement; rather, it is a general summary of policy that refers the employee to other policies and authorities. Second, that policy does not purport to authorize overtime pay for work done by another person during a shift "swap." On the contrary, it expressly excludes swapped time from overtime consideration. Third, Plaintiff does not allege that he was authorized to receive overtime pay,

which the policy expressly requires. Fourth, Plaintiff cannot plead an unjust enrichment claim: Delta received no benefit from him as to the shift in question (the labor was provided by someone else), and there is no inequity because the policy put him on notice that swap shifts do not count toward overtime.

Plaintiff also purports to bring this action on behalf of a putative class of shift-swapping employees. But those class allegations fail, not only for the same reasons as Plaintiff's individual claims, but because the courts of this Circuit have repeatedly held that contract and unjust enrichment claims similar to those at issue here cannot be adjudicated on a classwide basis; individual inquiries inevitably predominate over common ones.

As explained further below, the claims must be dismissed in their entirety.

## FACTUAL BACKGROUND

Defendant Delta Air Lines, Inc. is an air carrier governed by the Railway Labor Act, *see Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 238 F.3d 1300, 1304 (11th Cir. 2001), and therefore is not subject to the federal Fair Labor Standards Act ("FLSA"), which mandates overtime pay for many employees in the U.S. *See* 29 U.S.C. § 213(b)(2) (exempting from overtime "any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act").

Plaintiff alleges that he is a Delta employee and was so in 2022. Compl. ¶¶ 40-52. Plaintiff alleges that for him "and other members of the proposed class,

availability and entitlement to overtime pay is and has been governed by a document entitled 'Hours of Work, Overtime and Shift Differential (Ground, Noncontract Employees.),'" which he attaches as Exhibit A to the Complaint (hereinafter "Exhibit A" or "Hours of Work").

The "Hours of Work" document does not state anywhere that it is a contract, and in fact it states that it governs "Noncontract Employees" and that its purpose is "to ensure uniform administration of the Company's policies." Ex. A at 1. The document summarizes Delta overtime policy, including the rule that shifts employees voluntarily "swap" with one another "do not count towards OT threshold so swapping should never put an employee into an overtime eligible situation." *Id.* at 4. The document also states that overtime is subject to divisional or departmental policies and must be approved by a supervisor. *Id.* at 5.

Plaintiff alleges that in fall 2022, he "swapped" shifts with a colleague, Mr. Slaughter: Plaintiff worked Mr. Slaughter's scheduled shift on September 9, 2022, while Mr. Slaughter worked Plaintiff's shift on October 18, 2022. Compl. ¶¶ 42, 47. Plaintiff also alleges that he "picked up" a twelve-hour shift outside of his regular schedule on October 21, 2022. *Id.* ¶ 48. Plaintiff thus did not work more than the total number of hours for which he was scheduled. The gravamen of Plaintiff's complaint is that because Mr. Slaughter worked one of his shifts, "all of his scheduled shifts and scheduled days **<u>had been worked</u>**" in the relevant pay

period, and therefore he should have been paid overtime for the pick-up shift he worked outside his regular schedule. *Id.* ¶¶ 38-39, 49-50.

Plaintiff purports to represent a class comprising: "[a]ll current and former Delta employees who were governed by the Overtime Contract and were not paid overtime rates for work performed during scheduled time off during work periods in which they swapped off some or all of their scheduled hours." *Id.* ¶ 54. According to Plaintiff, the class includes "tens of thousands" of employees, some of whom are "citizens of states other than Georgia," and who work in multiple roles at "airport locations across the United States," "call center locations across the United States," and "Delta's eight hubs across the United States." *Id.* ¶ 6-8, 57.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, the Court may consider both "the face of the complaint and documents attached thereto." *Fin. Sec. Assur., Inc. v. Stephens*, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "When exhibits attached to a complaint contradict a plaintiff's general and conclusory allegations, the exhibits govern despite a court's duty to accept a plaintiff's allegations as true."

*Kinsey v. MLH Fin. Servs., Inc.*, 509 Fed. Appx. 852, 853 (11th Cir. 2013).

"Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification." *Vandenbrink v. State Farm Mut. Auto. Ins. Co.*, No. 8:12-CV-897-T-30TBM, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012). This is especially true where "Plaintiff's class action allegations show on their face that any common questions of fact or law would be greatly outweighed by the need for individualized determination[s.]" *Burdette v. Fed. Express Corp.*, No. 1:97-CV-2935-TWT, 1998 WL 190275, at *1 (N.D. Ga. Feb. 18, 1998) (Thrash, J.). *See also* Ex. 1 hereto, *Jewell v. Aaron's*, Case No. 1:12-CV-0563-AT, Dkt. 237, at *8-14 (April 29, 2014) (denying motion to amend to add Rule 23 class action claims against multistate employer as futile because such claims could never be certified) (citing *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009)).

## ARGUMENT

## I. THE "HOURS OF WORK" DOCUMENT IS NOT A CONTRACT

As a threshold matter in a breach of contract action, "[t]he Court must first determine whether Plaintiff has pleaded the existence of a contract." *Ins. Tr. for Delta Retirees v. UnitedHealth Grp., Inc.*, No. 1:15-CV-257-MHC, 2015 WL 13754318, at *4 (N.D. Ga. Aug. 24, 2015). "The party asserting the existence of a contract has the burden of proving its existence and its terms." *Jackson v. Easters*,

190 Ga. App. 713, 714 (1989). The document that Plaintiff identifies as the "contract" is, on its face and in light of Plaintiff's pleading, not a contract at all.

Plaintiff attaches a document titled "Hours of Work, Overtime and Shift Differential (Ground, Noncontract Employees)" as Exhibit A to his Complaint. He identifies this as "the Overtime Contract" and states that, for him "and other members of the proposed class, availability and entitlement to overtime pay is and has been governed by" Exhibit A. Compl. ¶ 12. He bases his breach of contract claim entirely on this document. *Id.* ¶¶ 68-69. The Court is entitled to consider the contents of Exhibit A in evaluating claims on a motion to dismiss, and the contents of Exhibit A are controlling as against any contradictory allegations in the Complaint. *Kinsey*, 509 Fed. Appx. at 853.

**A. <u>No Indicia of Contract Formation</u>**

Under Georgia law, "[g]enerally speaking, the policies and information in personnel or employee manuals neither create a contract, nor support a claim for breach of contract." *O'Connor v. Fulton Cnty.*, 302 Ga. 70, 71 (2017) (citations omitted). The "Hours of Work" document is a Delta policy manual that bears no indicia of being a contract—indeed, it indicates on its face that it is not. The title of the document states that it relates to "Noncontract Employees"—who, by definition, do not have a written contract. Ex. A at 1. The document's "PURPOSE," as stated in the very first paragraph, is "to ensure uniform

administration of the Company's policies"—not to form an agreement. *Id.*

Contract formation, moreover, requires "assent of the parties to the terms of the contract" and a "meeting of the minds of the parties, mutuality, and the clear expression of the terms of the agreement." *Ins. Tr. for Delta Retirees*, 2015 WL 13754318, at *4 (citing O.C.G.A. § 13-3-1, and *Jackson*, 190 Ga. App. at 714).[1] No facts to support these elements are pled here. Nor are those elements evident from the face of the document, which says nothing about assent or agreement. The document contains no mandatory language that would create a specific obligation on Delta's part. Indeed, the document hardly mentions Delta at all. Thus, it lacks indicators that Delta intended to be bound to specific obligations.

There is also no allegation (and nothing in Exhibit A to indicate) that the policy was ever signed, agreed to, or even seen by Plaintiff at the time he began employment. But "[t]o be enforceable, a promise of future compensation must be made **at the beginning of the employment**." *Arby's, Inc. v. Cooper*, 265 Ga. 240, 241 (1995) (emphasis added).

### B. No Contract Where Document Defers to Other Authoritative Policies

Where a document like a policy manual indicates that it is merely a summary of policy and that actual authority lies elsewhere, it is not a contract. In

[1] Plaintiff alleges that he resides in Georgia and worked for Delta in Georgia. Compl. ¶ 10. Thus, Delta cites principles of contract formation articulated by Georgia statutes and cases.

*Johnson v. Fulton Cnty.*, 235 Ga. App. 277 (1998), for example, an employee handbook described a "multi-step salary range" that was "established for each class and position," and which "provide[d] for regular annual increases of one step (4%) each year." Notwithstanding this seemingly detailed description of a pay raise system, the court held that the handbook did not contractually obligate the employer because its stated "purpose" was "to acquaint you with your job" and to "provide you with answers to many of your questions," not to form a contract. *Id.* at 278. The handbook also notified employees that their employment was actually governed by other "publications" and instructed employees to refer to them. *Id.*

Delta's "Hours of Work" document does much the same. Its stated purpose is to ensure "uniform administration of the Company's policies," not to form a contract. And like the non-contract in *Johnson*, it notifies employees that overtime is governed by other policies. Ex. A at 5 ("Approval of overtime should be handled as specified by divisional or departmental policy."). Delta employees thus were on notice that their policy manual was **not** a definitive promise of overtime and thus not intended to be a contract.

### C. No Contract Where Payment Is Discretionary

The "Hours of Work" document also states that overtime is at the discretion of supervisors: "The appropriate supervisor/manager must authorize all overtime worked by employees. Employees may not work overtime unless it is authorized."

Ex. A at 5.[2] This discretion on the part of the supervisor/manager further underscores that "Hours of Work" is not a contract.

Because Delta is an airline subject to the Railway Labor Act, its employees are exempt from federal overtime requirements. 29 U.S.C.A. § 213(b)(3). Payment of overtime is therefore not mandated by federal law; rather, it is a benefit that Delta confers at its discretion. In this way, it is akin to a bonus or other incentive payment that an employer pays as it sees fit, based on its business needs.

But it is well-established that employers are entitled to structure such incentive compensation plans as they see fit, and "**[w]hether or not the management incentive plan . . . constitutes a part of the contract of employment between the plaintiff and the defendant**, the provisions of the plan are nevertheless binding on and determinative of the rights of the plaintiff who is asserting the alleged rights to the benefits thereunder." *Automatic Sprinkler Corp. of Am. v. Anderson*, 243 Ga. 867, 869, 257 S.E.2d 283, 285 (1979). And where such incentive compensation "is based even in part on the exercise of discretion, the promise to pay . . . is an unenforceable executory obligation." *VanRan Commc'ns Servs., Inc. v. Vanderford*, 313 Ga. App. 497, 498–99 (2012); *see also Milks v. Software AG USA, Inc.*, No. 1:10-CV-236-TCB, 2010 WL 11440937, at

[2] Notably, the "Hours of Work" document speaks in terms of "eligibility" for overtime, not entitlement to it. *See, e.g.*, Ex. A at 4.

*6 (N.D. Ga. Apr. 13, 2010) (compensation plan "vest[ing] the employer with absolute discretion" was enforceable). The supervisor's discretion in approving overtime undermines any claim that the overtime policy discussed in "Hours of Work" is contractual in nature.

The "Hours of Work" document Plaintiff attaches to his Complaint is, by its terms, not a contract. It has none of the usual indicia of contract formation, it speaks of "eligibility" for overtime rather than undertaking specific obligations to pay overtime, and it conditions overtime pay on external factors like divisional/departmental policies and a supervisor's approval. Plaintiff's breach of contract claim thus fails at the outset.

## II. DELTA'S POLICY PLAINLY PROHIBITS OVERTIME PAY FOR SWAPS

Plaintiff's claims fail for another, independent reason: the "Hours of Work" policy expressly excludes swapped time from consideration for overtime.

Delta is not subject to the FLSA. *Delta Air Lines, Inc.*, 238 F.3d at 1304; 29 U.S.C. § 213(b)(2); *see also Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1287 (11th Cir. 2002). Thus, its payment of overtime pay is voluntary and governed only by Delta's own policies.[3] Plaintiff implicitly recognizes this, bringing his claim under an alleged "contract."

[3] Subject to state statutes—*see* Part V. But Georgia has no overtime statute.

But the policy at issue here, regardless of whether it creates any obligations on Delta's part, simply does not permit overtime for swapped time. On the contrary, the "Swaps" section of the policy states that: "[s]waps do not count towards OT threshold so swapping should never put an employee into an overtime eligible situation." Ex. A at 4. The plain language of the document could not be clearer. Plaintiff admits as much: "Under the Overtime Contract, swaps do not count towards overtime thresholds." Compl. ¶ 30. **Swaps do not count**.

Plaintiff, however, asks the Court to distinguish between "swapping on"—hours that the employee works on someone else's behalf—and "swapping off"—hours someone else works on the employee's behalf. Nothing in the entire document distinguishes between "swapping on" and "swapping off," *see generally* Ex. A, so Plaintiff's claim essentially asks the Court to insert a distinction into the text where none exists. *Id.* ¶¶ 30-39. Black letter contract law prohibits such reformation. *See Seay v. Spratling*, 133 Ga. 27 (1909) ("[T]his would not be the interpretation or the construction of the contract which we find in the record, but would be reformation of the contract—a reading into it of stipulations which the parties did not insert, and apparently did not intend to insert.").

To get around the plain language of the document excluding swaps from any overtime threshold, Plaintiff asks the Court to make speculative inferences based on "[t]he use of the passive voice in the language of the Overtime Contract."

Compl. ¶ 39. This passive language does not appear in the section on swaps. Rather, Plaintiff cites an entirely separate provision requiring that an irregular employee's "scheduled days have been worked" before the employee could be eligible for overtime. Ex. A at 12. According to Plaintiff, this is intended to signal that "what matters is whether an employee's scheduled hours in a given work period *were worked*, not whether they were the one working them." Compl. ¶¶ 38-39. But Plaintiff may not use another section of the contract to try to change the meaning of an unambiguous provision. *Philadelphia Indem. Ins. Co. v. Sabal Ins. Grp., Inc.*, 786 F. App'x 167, 173 (11th Cir. 2019) (courts refer to other sections of a contract "only when a legal text is ambiguous," and where a "provision is unambiguous . . . there is no need to turn to other sections . . . to interpret it").

Nor can an unreasonable interpretation create an ambiguity where none exists. *See Labas Ventures, LLC v. Butterfly Agency, LLC*, No. 1:20-CV-03889-ELR, 2020 WL 8182216, at *9 (N.D. Ga. Nov. 30, 2020) (quoting *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1252 (11th Cir. 2008)) ("If the interpretation urged by one party is unreasonable in light of the contract's plain language, the contract is not ambiguous[.]"). *See also Edgewater Hall Enterprises, LLC v. City of Canton*, 366 Ga. App. 142, 151 (2022) (contracts are to be given "a construction which is consistent with reason and common sense"). Plaintiff's reading is patently unreasonable in light of the rest of the document, which must be read as a whole.

*Willesen v. Ernest Commc'ns, Inc.*, 323 Ga. App. 457, 460 (2013).

The "Hours of Work" policy manual makes clear in multiple places that overtime is based upon an employee's own work. For example:

- p. 5: "When **an employee works** more than the regularly scheduled hours of a shift, he has the option to bank compensatory time in lieu of overtime pay."
- p. 6: A description of OT/comp time policy for Minnesota workers expressly excludes swaps: "Employees based in Minnesota may earn up to eight hours of compensatory time during a work week. Hours worked (**excluding swap**) in excess of forty-eight must be paid at the applicable overtime rate. Employees can swap hours which are to be compensated at straight time rate."
- p. 14: "Company training before and after normal working hours is paid at the applicable overtime rate provided **the employee works** all hours of their regular shift."

The document also includes dozens of "scenarios" and "examples," all of which show that it is the hours worked by the employee seeking overtime that count. For example, immediately below Plaintiff's cited "passive voice" section, there is an exemplar "Scenario" in which "[a]n irregularly scheduled full-time employee is scheduled to work a 28-day rotating shift," but is overtime-eligible because "**he worked** four hours overtime" on two of his days off. Ex. A at 12.

On pages 16-32 of the document (over half its total length) Delta presents roughly two dozen other "Examples" demonstrating how the policy works. **Not one** involves swapped time; **all** refer to the time the employee works. If Delta had intended to pay overtime for swapped time, surely one of these examples would demonstrate how that would work. They don't, because Delta didn't—as plainly stated in the "Swaps" section. Plaintiff cannot undermine that plain language by

citing "isolated clauses and provisions of the contract"; such phrases must be read "in the context of the agreement as a whole." *Willesen*, 323 Ga. App. at 460.

Moreover, the policy clearly shows that management approves and assigns overtime in order to spread around both the burden of working extra shifts and the accompanying reward of overtime pay: "The appropriate supervisor/manager must authorize all overtime worked by employees. Employees may not work overtime unless it is authorized. Managers should **distribute available overtime equitably** among eligible employees." Ex. A at 5 (emphasis added). This purpose would be defeated if employees could assign themselves overtime through swaps—which is one reason swaps "do not count towards OT threshold" and can "never put an employee into an overtime eligible situation." *Id.* at 4.

Given all this, there is no reason to conclude that the plain meaning of the "Swaps" section should be altered or reformed in any way. The "Hours of Work" document does not promise, offer, or authorize overtime pay for swaps—whether "swapped on" or "swapped off."

## III. PLAINTIFF DOES NOT PLEAD THAT HE WAS AUTHORIZED OVERTIME PAY

Even if the "Hours of Work" document could be read as a contract providing overtime for swaps, Plaintiff's claims fail for a third reason: he does not allege that he satisfied the conditions for overtime pay eligibility. Plaintiff nowhere alleges that he sought or received authorization from a supervisor to receive overtime pay

as the "Hours of Work" document requires. Ex. A at 5. Absent such authorization, which Plaintiff does not plead, his claims must fail. *Jackson v. JHD Dental, LLC*, No. 1:10-CV-00173-JEC, 2011 WL 2441920, at *7 (N.D. Ga. June 14, 2011) (employee plaintiff has burden of proof to show that any prerequisite to a contractual payment obligation has been fulfilled).

## IV. PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS

Plaintiff's claim for unjust enrichment fares no better than his contract claim. Unjust enrichment is an equitable claim available where there is no express contract between the parties[4] but:

> a plaintiff asserts that the defendant **induced or encouraged** the plaintiff to **provide something of value to the defendant**; that the plaintiff **provided a benefit to the defendant** with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it **by the plaintiff** and either affirmatively chose to accept the benefit or failed to reject it.

*Campbell v. Ailion*, 338 Ga. App. 382, 387 (2016) (emphasis added).

Plaintiff does not and cannot plead that Delta "induced or encouraged" him to swap off a shift with the promise of overtime earned for someone else's work; on the contrary, Exhibit A makes plain that swaps do not count toward the

[4] "Unjust enrichment applies when as a matter of fact there is no legal contract[.]" *Engram v. Engram*, 265 Ga. 804, 806 (1995). Because, as discussed above, the "Hours of Work" document is not a contract, Delta addresses the unjust enrichment claim as well. If the Court rules that the document is a contract, however, it must dismiss this claim.

overtime threshold, and Plaintiff does not plead that any supervisor or manager otherwise authorized or promised Plaintiff overtime pay for the shift. Lacking this element of inducement or encouragement, the claim fails.

Plaintiff's claim also fails because he did not confer a benefit on Delta; the other employee, Mr. Slaughter, provided the "employee labor" that Plaintiff claims Delta received as a benefit. Compl. ¶¶ 47, 72. To sustain a claim for unjust enrichment, however, a plaintiff must provide the benefit directly to the defendant. *See Scott v. Mamari Corp.*, 242 Ga. App. 455, 458 (2000) (no unjust enrichment where neither defendant "received the direct benefit of [plaintiff]'s labor"); *Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 576 (N.D. Ga. 2007) (same).

Plaintiff argues that Delta received the benefit of hours worked, even if they were not worked by him. Compl. ¶ 28-29. But Plaintiff does not allege that Delta failed to pay Mr. Slaughter, who actually worked the shift, for his labor. Thus, that labor was compensated. Nothing in the "Hours of Work" suggests that an employee who "swaps off" is entitled to overtime pay as some kind of "finder's fee" for someone else's labor.

Finally, unjust enrichment is an equitable principle that only applies when needed to remedy some inequity. As discussed above, the policy clearly states that swaps do not count toward overtime, so there is no inequity. *See, e.g., Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162 (11th Cir.

2019) ("Because Plaintiffs knew the amount Defendants would pay before they undertook each repair, we affirm the dismissal of their unjust enrichment claim."). To the extent Plaintiff had any doubt, he could and should have asked his supervisor if he could receive overtime—which he was required to do anyway.

In short, Plaintiff's unjust enrichment claim fails on multiple elements and must be dismissed.

## V. PLAINTIFF'S PUTATIVE CLASS ALLEGATIONS MUST BE DISMISSED

Plaintiff also fails to state a claim as to his class allegations, which necessarily will require individualized inquiries that will overwhelm any common questions.

Although evaluation of class allegations is often deferred until the class certification stage, "[i]n some instances, the propriety *vel non* of class certification can be gleaned from the face of the pleadings," *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008), especially where the "failure of predominance [under Rule 23(b)(3)] is readily apparent from a reading of the . . . complaint." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997).[5] When that occurs, "nothing in Rule 23 precludes the consideration of class certification

---

[5] *See also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (noting, as to plaintiff's representative capacity, that "[s]ometimes the issues are plain enough from the pleadings to determine whether" Rule 23 is satisfied).

issues in the context of a motion to dismiss." *Bohannan v. Innovak Int'l, Inc.*, 318 F.R.D. 525, 529 (M.D. Ala. 2016). Thus, this Court has granted a motion to dismiss class allegations where such "allegations show on their face that any common questions of fact or law would be greatly outweighed by the need for individualized determination[.]" *Burdette*, 1998 WL 190275, at *1 (Thrash, J.).

**A. <u>The Complaint Raises Numerous Individualized Questions</u>**

Here, the impossibility of certifying a class is apparent on the face of the pleadings. Plaintiff seeks to certify the following class:

> All current and former Delta employees who were governed by the Overtime Contract and were not paid overtime rates for work performed during scheduled time off during work periods in which they swapped off some or all of their scheduled hours

Compl. ¶ 54.

In employment contract disputes like this one, the very nature of the claim itself often requires highly individualized findings. As the Eleventh Circuit observed in *Babineau*, 576 F.3d at 1191, "[c]ertification is inappropriate if the plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." (Quotation marks omitted.) In that case, FedEx employees alleged that the company had not paid them for hours worked before and after their shifts, in breach of their contract. As here, the existence of a contract was disputed, with the plaintiffs relying on an "agreement" that incorporated several employee

handbooks. *Id.* at 1187.

The court held that even if the existence of a contract was assumed, numerous individualized defenses could still be presented that would overwhelm common issues, including whether "an employee knew of FedEx's policy prohibiting off-the-clock work and chose to engage in it anyhow in breach of that contract"; "whether each employee voluntarily arrived early or stayed late and whether he engaged in any work"; and whether, despite the existence of a "general policy" of demanding employees work before and after shifts, each individual had actually been harmed by it, in light of employees' varied personal reasons for choosing to arrive early or stay late. *Id.* at 1192-94.

And in a case in this district, Judge Totenberg held that it would be futile to allow an employee-plaintiff to amend his complaint to add class allegations because predominance would inevitably fail. *See* Ex. 1 hereto, *Aaron's*, Dkt. 237 at *8-14 (April 29, 2014) (order on motion for leave to file amended complaint). Citing *Babineau*, "the Court [could not] perceive how Plaintiff could properly establish the predominance in legal issues or relevant facts," given that the plaintiff was attempting to rely on the employer's policies to establish damages and "the law of 32 potential states would have to be considered in combination with the varied factual circumstances of potentially hundreds of claimants." *Id.* at *12-14.

The same considerations apply here. The Court or a finder of fact will have

to determine such highly individualized issues as:

- whether a contract was formed based on the unique circumstances of each class member's employment, their personal understanding, and widely differing state laws (see Part V.B., *infra*);
- as in *Babineau*, whether class members were aware of Delta's rule prohibiting overtime for swaps and whether they chose to do swaps anyway, including for their own personal reasons having nothing to do with overtime pay;
- for each class member, the amount of time worked and as to hours in excess of a standard week, whether it was "swapped on," "swapped off," or simply personally-worked overtime—which will involve tracking the informal agreements between pairs of employees, not all of whom will necessarily be class members;
- whether supervisor authorization was obtained; whether divisional and departmental policies were followed; and
- individualized statute of limitations defenses.[6]

As *Babineau* and *Aaron's* both held, such highly individual contract claims

[6] *See Oginski v. Paragon Properties of Costa Rica, LLC*, 282 F.R.D. 672, 677–78 (S.D. Fla. 2012) (plaintiffs' "failure to limit the proposed class" by time "places the burden on the factfinder to determine, on an individualized basis, whether Defendants have valid statute of limitations affirmative defenses.").

lack commonality and are inappropriate for class treatment.

## B. Multiple States' Conflicting Laws Destroy Commonality

Plaintiff's class definition, and any nationwide class definition he could allege, also raises individualized issues of how state law affects the putative class members' claims.

### 1. Foreign States' Statutes Will Impact Class Members' Claims

As noted in "Hours of Work" itself, Ex. A at 5-6, Delta's overtime policy is governed or limited by state statutes in a number of states. The Court will have to consider the individualized effects of state overtime statutes on Delta's overtime policy as to each class member. *Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983) (Georgia choice of law defers to other states where a statute controls).

"To certify a multi-state class action, a plaintiff must prove through 'extensive analysis' that there are no material variations among the law of the states for which certification is sought." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004). But this is a burden that Plaintiff cannot and will never be able to carry. As just one example, while Georgia has no mandatory overtime law affecting airlines, a Rhode Island statute requires airlines to pay overtime—but it specifically exempts swaps. 28 R.I. Gen. Laws Ann. § 28-12-4.3(a)(10). Even then, the Rhode Island Supreme Court recently ruled that the state overtime law was

partially preempted by federal law, at least as to time worked on Sundays and holidays. *Brindle v. Rhode Island Dep't of Lab. & Training*, 211 A.3d 930, 937 (R.I. 2019). Thus, the Court would be in the position of determining what space, if any, was left for a supposed "contract" between the requirements of federal law and the variety of state overtime laws around the country, as to each class member, based on their individual location and work arrangements. Commonality cannot exist in that morass. "With no single law governing the entire class, common issues of law cannot be shown to warrant Rule 23 treatment." *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 883 (5th Cir. 1973).

### 2. Due Process Requires Consideration of Each Class Member's Relationship to Georgia

While Georgia courts typically presume that Georgia law will apply to common-law claims originating in other states, *Frank Briscoe Co.*, 713 F.2d at 1503, that presumption is subject to due process requirements that the Court determine whether Georgia has "significant contact or significant aggregation of contacts to the claims asserted **by each member of the plaintiff class**, contacts creating state interests," the degree of such interest, and whether Georgia law is in "substantive conflict with [other] jurisdictions." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985) (emphasis added). While this is manageable as to a case with individual plaintiffs, in the class action context it creates a mass of individualized questions that overwhelm common ones.

Thus, in *Kirkpatrick v. J.C. Bradford & Co.*, the Eleventh Circuit affirmed the trial court's denial of class certification on the basis that plaintiffs would be unable to meet this standard:

> [A]lthough the law of Georgia might eventually be applied on some claims involving purchases made in other states, **that could be determined only after the district court had fully surveyed the law of the states of purchase**. Moreover, even if Georgia law would require application of its own common law rules to some claims involving purchases in other states, the law of Georgia could be applied consistent with due process **only if the particular transaction had some significant relation to Georgia**.

827 F.2d 718, 725 & n. 6 (11th Cir. 1987) (emphasis added). As the district court correctly concluded, the necessity of determining questions of multiple states' law, as well as the individualized inquiries into whether class members' claims were related to Georgia, defeated commonality. *Id.* at 725.

In this case, too, the Court will be forced to undertake the analysis of every state's law of contract formation to determine whether it differs substantively from Georgia law. To be clear, there will be substantial variation: different states have set different rules for determining when a contract is formed by the receipt of an employee handbook or policy.[7]

[7] *Compare, e.g.*, *O'Connor*, 302 Ga. at 71 (under Georgia law, employee manuals "generally" do not create a contract, but certain compensation-related provisions "may" create a contract, depending on the circumstances), *with Kartheiser v. Am. Nat. Can Co.*, 84 F. Supp. 2d 1008, 1013 (S.D. Iowa 1999) (under Iowa law, "the following factors should be examined: a) whether the policy is a mere guideline or a directive; b) whether the language of the policy is detailed and definite or general

Additionally, individualized inquiries will be required to determine whether each class member's claim has some connection to Georgia, given that many will live, be employed, and interact with Delta entirely in another state. *Auto. Leasing Corp. v. Mahindra & Mahindra, Ltd.*, No. 1:12-CV-2048-TWT, 2014 WL 988871, at *4 (N.D. Ga. Mar. 14, 2014) (where many plaintiffs did not "conduct business in Georgia" and their interactions with defendant "occurred at different places across the country for different Plaintiffs at different times" individualized due process analysis was required) (Thrash, J.).

Because the state contacts must create "state interests" for Georgia, they cannot be incidental to the transactions at issue. So the mere fact that Delta is headquartered in Georgia does not allow Plaintiff to shortcut the due process analysis. *Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919-TWT, 2017 WL 364094, at *6 (N.D. Ga. Jan. 25, 2017) (due process analysis could not rest solely on the fact

---

and vague; and c) whether the employer has the power to alter the procedures at will or whether they are invariable"); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1273 (11th Cir. 2009) (under Florida law, policy manuals are only enforceable when "they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract"); *Torosyan v. Boehringer Ingelheim Pharms., Inc.*, 234 Conn. 1, 14, 662 A.2d 89, 97 (1995) (under Connecticut law, "any such representation or handbook must constitute an offer to modify the preexisting terms of employment by substituting a new implied contract for the old"); *and Ferraro v. Koelsch*, 124 Wis. 2d 154, 167-69 (1985) (under Wisconsin law, "implication alone" would not "convert a handbook" into a contract, but a contract could exist where conditions in handbook "were specifically accepted by" the plaintiff).

that defendant's headquarters was in Georgia) (Thrash, J.)

That does not end the inquiry: once the Court determined, for each class member, which state's law applied to that class member, it would also have to determine whether the particular circumstances of that employee's employment and interaction with "Hours of Work" (if any) indicate that a contract was formed under the applicable state law. Thus, the need to conduct due process and state law analyses as to each class member destroys commonality.

### C. <u>Unjust Enrichment Claims Are Unsuitable for Class Treatment</u>

Unjust enrichment, an equitable quasi-contract claim, also requires individualized determinations and is inherently unsuited to class treatment:

> [B]efore it can grant relief on this equitable claim, a court must examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would result or persist. Due to the necessity of this inquiry into the individualized equities attendant to each class member, courts, including ours, have found unjust enrichment claims inappropriate for class action treatment.

*Vega*, 564 F.3d at 1274. Particularly in light of the need to determine what individual class members expected based on the policy and the "Swaps" section, the Court cannot rule on class members' unjust enrichment claims *en masse*.

## <u>CONCLUSION</u>

For all the above reasons, Plaintiff cannot state a claim on his own behalf, nor can he certify a class. The Complaint must be dismissed in its entirety.

DATED: March 4, 2024

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/ Seth J. Fortin*

Brett C. Bartlett
Georgia Bar No. 040510
bbartlett@sayfarth.com
Lennon B. Haas
Georgia Bar No. 158533
lhaas@seyfarth.com
Seth J. Fortin
Georgia Bar No. 759830
sfortin@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LUKAS GOODYEAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>Defendant. | Case No. 1:23-cv-05712-TWT |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 4, 2024, I electronically filed MEMORANDUM ON LAW IN SUPPORT OF MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will send e-mail notification of such filing to all attorneys of record.

*<u>/s/ Seth J. Fortin</u>*
Seth J. Fortin
Georgia Bar No. 759830