# EXHIBIT

# 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KURTIS JEWELL, on behalf of himself and all others similarly situated, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 1:12-CV-0563-AT |
| v. | : | |
| AARON'S, INC. | : | |
| Defendant. | : | |

**ORDER**

This matter is before the Court on Plaintiff's Renewed Motion for Leave to File Amended and Supplemental Complaint [Doc. 164] and Motion for Leave to File Excess Pages in his Reply Brief in support of the Renewed Motion for Leave to File Amended and Supplemental Complaint[1] [Doc. 174].

## I. BACKGROUND

After the Court allowed Aaron's to amend its Answer to assert an affirmative defense to FLSA liability under the Motor Carrier Act ("MCA"), Plaintiff sought leave to amend the complaint to add supplemental state law claims for breach of contract and unjust enrichment on behalf of those opt-in plaintiffs who may be subject to the MCA exemption. During a conference call with the parties on May 21, 2013, the Court expressed its concern over having to apply different state laws according to where each of the plaintiffs were

[1] The Court **GRANTS NUNC PRO TUNC** Plaintiff's Motion for Leave to File Excess Pages [Doc. 174].

employed. On July 30, 2013, the Court denied Plaintiff's motion without prejudice, and granted Plaintiff leave to renew the motion after Aaron's specifically identified which opt-in plaintiffs are subject, or potentially subject, to the MCA exemption and the scope and applicability of that defense could be determined. Other than providing a general estimate of 953 of the more than 1,700 individuals who have opted into this case, Aaron's declined to specifically identify the opt-in plaintiffs subject to the defense until after discovery.

Despite the fact that discovery did not actively begin until November 2013, Plaintiff renewed his motion for leave to amend the complaint on October 10, 2013. Plaintiff seeks to assert "common-law claims for breach of contract and unjust enrichment 'as alternatives to the FLSA claim' already asserted." (Reply at 2.) With respect to these common law claims, "Plaintiff seeks the certification of a Rule 23 class consisting of all persons who have opted-in to the case as of October 10, 2013." (Reply at 3.)

## II. DISCUSSION

Plaintiff seeks leave to bring nationwide class claims for breach of contract and unjust enrichment by invoking the liberal amendment standard of Fed. R. Civ. P. 15. Plaintiff asserts that Georgia law would govern the claims of all members of the prospective class because under Georgia's choice of law rules "the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes. . . . [and] [w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law."

*E.g.*, *Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983).[2] In response, Aaron's asserts that (1) Ohio choice-of-law controls this case, not Georgia, and Ohio law mandates that this Court apply the law of a putative class member's state of employment; and (2) Plaintiff's proposed amendment is futile because Plaintiff cannot satisfy Federal Rule of Civil Procedure 23's requirements for bringing class actions.

**A. Whether Georgia or Ohio Choice of Law Rules Apply**

This case was originally filed by Plaintiff in the United States District Court for the Northern District of Ohio, Eastern Division. Aaron's moved to transfer the case to this Court pursuant to 28 U.S.C. § 1404(a) as a more convenient forum. In his Memorandum Opinion and Order transferring the case to this Court on February 22, 2012, Judge Nugent contemplated that this Court would be "required to apply the law of the transferor court, regardless of who initiated the transfer." (Doc. 31 at 7) (citing *Ferens v. John Deere Co.*, 494 U.S. 516 (1990)).

The Supreme Court has held that following a transfer of venue under § 1404(a), the transferee court must apply the choice-of-law rules that would have

---

[2] "Therefore, Georgia's choice of law rules require application of Georgia law unless such application is inconsistent with due process. . . . To determine whether application of Georgia law to the plaintiffs' civil conspiracy claims is inconsistent with due process, the court must analyze whether the State of Georgia has 'significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of [Georgia] law is not arbitrary or unfair.'" *Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 571 (N.D. Ga. 2007) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985)).

been applied by the transferor court if there had been no change of venue. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (limiting holding to transfers initiated by the defendant); *Ferens v. John Deere Co.*, 494 U.S. 516, 519 (1990) (applying *Van Dusen* to transfers initiated by the plaintiff). Generally a transfer of venue under § 1404(a) should be "but a change of courtrooms." *Van Dusen*, 376 U.S. at 639, n. 40 (noting that its holding did not limit transferee court from applying its own rules governing the conduct and dispatch of cases in its court but applied with respect to the state laws of the transferor court that would significantly affect the outcome of the case); *James Ventures, L.P. ex rel. Alpert v. Timco Aviation Servs., Inc.*, 315 F. App'x 885, 888 (11th Cir. 2009).

Plaintiff argues that *Van Dusen* does not apply to this case which was brought under Federal law. (Reply at 18) (citing *Murphy v. F.D.I.C.*, 208 F.3d 959, 965 (11th Cir. 2000) (adopting reasons of D.C. Circuit that "the logic behind *Van Dusen*—reflecting the need to ensure that federal and state courts uniformly apply the same state law to diversity cases regardless of where the cases are tried—does not apply to a case brought under federal law because federal law is supposed to be unitary"). Under Plaintiff's rationale, *Van Dusen* does not apply because when this case was transferred it only asserted a claim under Federal law and, "[t]he litigation will involve diversity jurisdiction only if and when [Plaintiff] receives permission to pursue the claims set forth in his proposed Amended and Supplemental Complaint, which will occur (if at all) in this venue – not in Ohio." (Reply at 18-19.)

Plaintiff has not cited any cases on point to support his proposition that the *Van Dusen* principle does not govern a transferee court's obligation to apply the choice of law rules of the transferor court when faced with claims/questions involving state law under these circumstances. Nor does the Court's reasoning in *Murphy*, relied on by Plaintiff, compel this conclusion. There the Eleventh Circuit agreed with the Second, Eighth, Ninth, and D.C. Circuits that "in cases where ***federal law*** is at issue, transferee courts are obligated to follow their own interpretation of the relevant law." *Murphy v. F.D.I.C.*, 208 F.3d at 965 (citing *Temporomandibular Joint (TMJ) Implant Recipients v. E.I. DuPont De Nemours & Co.*, 97 F.3d 1050, 1055 (8th Cir.1996) (holding that "[w]hen analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located") (emphasis added). *Murphy* thus held that "[s]ince the federal courts are all interpreting the same federal law, uniformity does not require that transferee courts defer to the law of the transferor circuit." *Id.* at 966. Uniform application of federal law is not implicated by the Court's determination here as to what law should be applied to any class-wide breach of contract and unjust enrichment claims.

The Court therefore concludes that Ohio choice of law rules govern based on the policy considerations underlying *Van Dusen* and the law of the case doctrine implicated here by virtue of the transfer order. In addressing whether *Van Dusen* should apply to a plaintiff's motion to transfer, the Supreme Court in

*Ferens v. John Deere Co.*, summarized the policy considerations underlying *Van Dusen*:

> First, § 1404(a) should not deprive parties of state-law advantages that exist absent diversity jurisdiction. Second, § 1404(a) should not create or multiply opportunities for forum shopping. Third, the decision to transfer venue under § 1404(a) should turn on considerations of convenience and the interest of justice rather than on the possible prejudice resulting from a change of law.

*Ferens v. John Deere Co.*, 494 U.S. at 523. The *Ferens* Court reasoned that applying the law of the transferee court would seriously undermine the *Erie* rule which "remains a vital expression of the federal system and the concomitant integrity of the separate States. . . . It would mean that initiating a transfer under § 1404(a) changes the state law applicable to a diversity case," i.e. a case involving questions of state law. *Id.* at 525-26. The Supreme Court views § 1404 "as a housekeeping measure that should not alter the state law governing a case under *Erie*." *Id.* at 526. *Van Dusen's* policy against forum shopping requires courts "to interpret § 1404(a) in a way that does not create an opportunity for obtaining a more favorable law by selecting a forum through a transfer of venue." *Id.* at 527.

The Ohio Court appears to have relied on this policy consideration in determining there would be no hardship to the Plaintiff as a result of the change of venue from Ohio to this Court. (*See* Doc. 31 at 7.) The law of the case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" unless the decision was "clearly erroneous and would work manifest injustice." *See*

*Arizona v. California*, 460 U.S. 605, 618-19, n.8 (1983); *Murphy*, 208 F.3d at 966. The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided. *See Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984); *United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984). It applies with greater than usual force to transfer decisions, to avoid "jurisdictional ping pong." *Scooter Store, Inc. v. Spinlife.com, LLC*, 2010 WL 3489013 (S.D. Ohio 2010), *aff'd*, 2011 WL 1072476 (S.D. Ohio 2011) (quoting *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). Generally speaking, an order of transfer should be examined by the transferee court only under the most compelling of circumstances. *Shute v. Carnival Cruise Lines, Inc.*, 804 F. Supp. 1525, 1527 (S.D. Fla. 1992) (citing *In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir.1983); *see also Roofing and Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 983 (11th Cir. 1982) (holding that court lacked jurisdiction to review a transfer order entered by a district court of another circuit).

Courts must rarely invoke the "clear error" exception to the law of the case doctrine, "less the exception swallow the rule." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1370 (11th Cir. 2003). The relevant determination is: "in a close case, a court must defer to the legal conclusion of a coordinate court in the same case; only when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling." *Id.* at 1370-71. The clear error exception does not apply in this case. While the Court has been unable to find any case exactly

on point – whether *Van Dusen* applies where the state claims did not arise until after a § 1404(a) transfer – there is no basis for the Court to conclude that the Ohio Court was incorrect in contemplating that, to the extent implicated, Ohio choice of law rules would apply to the adjudication of claims in this Court.

Aaron's is correct that under Ohio choice of law rules, the governing law for Plaintiff's proposed state law claims is the law of the state in which a putative class member was employed in light of Ohio's application of the "significant relationship" tests of the Restatement (Second) of the Law of Conflicts to resolve choice-of-law issues. *See, e.g., Power-Tek Solutions Servs., LLC v. Techlink, Inc.*, 403 F.3d 353, 357 (6th Cir. 2005) (applying Restatement to breach of contract to determining which jurisdiction has the most significant relationship to the transaction and the parties); *Nat'l Strategies, LLC v. Naphcare, Inc.*, No. 5:10-cv-00974 2011 WL 3419635, at *9 (N.D. Ohio Aug. 4, 2011) (applying Restatement to unjust enrichment).

**B. Whether Plaintiff's Proposed Amended and Supplemental Complaint Satisfies Class Action Requirements of Fed. R. Civ. P. 23**

The Court recognizes that generally, Rule 15 permits the liberal amendment of pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). However, a court may deny leave to amend if the opposing party demonstrates the amendment would be futile, i.e., "when the complaint as amended is still subject to dismissal." *See Foman*, 371 U.S. at 182; *Hall v. United States Ins. Co. of America*, 367 F.3d 1255,

1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)).

At this point in the litigation, it is impossible to know the exact number of opt-in plaintiffs who will be subject to the MCA. According to Aaron's, the 1,771 individuals who have opted into this litigation worked in at least 32 different states. Although Plaintiff is not *per se* seeking to add breach of contract claims and unjust enrichment claims for each of the 1,771 opt-ins, it is likely that a significant number of these employees may be subject to the MCA for some part of their period of employment. To date, Aaron's has conducted 26 depositions and asserts that 25 of the plaintiffs are subject to the MCA exemption. Thus, allowing Plaintiff to add class claims for breach of contract and unjust enrichment would require the application of multiple states' laws. In the context of the claims sought to be asserted in this case, class wide treatment of such claims would not be feasible under Fed. R. Civ. P. 23.[3] *See, e.g., Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171-1176 (11th Cir. 2010) (reversing district court's certification of class action for breach of contract due to the: (1) difficulty of managing the variation among the material contractual terms; (2) likelihood that the trial court would be required to evaluate significant quantities of individualized extrinsic evidence;

[3] Plaintiff's class wide claim for unjust enrichment is likewise futile under Rule 23. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1267 (11th Cir. 2004) (finding that because an unjust enrichment is a quasi-contractual claim, individualized factual determinations that overwhelm common issues of fact and law regarding contract-based claims would also apply to unjust enrichment claim); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (holding that plaintiff's unjust enrichment claim suffers from many of the same commonality and predominance problems that beset plaintiff's contract claim for "unpaid wages").

Case 1:23-cv-05712-VT Document 30 Filed 07/30/24 Page 10 of 15

and (3) the need to apply substantial variations among the six bodies of state law to the factual underpinnings of the contract claims).

Plaintiff objects to any analysis at this stage of the merits of the common law claims and their suitability for class treatment, arguing that these issues should be decided on a motion to dismiss and a motion for class certification. As Plaintiff seeks to pursue class certification on his state claims, the Eleventh Circuit's analysis in *Babineau v. Fed. Exp. Corp.*, remains relevant to the Court's caution in allowing Plaintiff leave to amend:

> Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug [Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1188 n. 15 (11th Cir. 2003)(citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 [] (1982)); *see also Vega [v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009)]. "It is inescapable that in some cases there will be overlap between the demands of [Rule] 23(a) and (b) and the question of whether [a] plaintiff can succeed on the merits." *Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 714 (5th Cir.1973) (en banc). Thus, the principle that district courts should not evaluate the merits of plaintiffs' claims "should not be talismanically invoked to artific[i]ally limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements." *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n. 12, 98 S.Ct. 2454, 2458 & n. 12, 57 L.Ed.2d 351 (1978) ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' ... 'The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.' ") (emphasis and citations omitted). While we avoid merits determinations to the extent practicable, this case does require the Court to look beyond the pleadings and examine the parties' claims, defenses, and evidence to

Case 1:23-cv-05702-TWT Document 207 Filed 04/29/24 Page 11 of 15

> ensure that class certification would comport with Rule 23's standards.

*Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009) (affirming district court's denial of class certification of breach of contract claims asserted by couriers, courier/handlers, service agents, and other non-exempt employees who claimed that FedEx breached their employment contracts by failing to pay for time worked during intervals between clocking in and out and unpaid breaks).

Plaintiff's Proposed Amended and Supplemental Complaint contains bare-boned formulaic allegations in support of the class claims for breach of contract and unjust enrichment. For example, Plaintiff alleges that: (a) "Employees had a contractual right to compensation for overtime equal to one-and-a-half times their ordinary hourly rate," (Doc. 164-2 ¶ 19); (b) "[t]he merits of each class members' claims turn on the same essential facts and issues. The Court can address these matters on a class-wide basis without having to conduct an individualized inquiry for each eligible claimant," (*Id.* ¶ 31); and (c) "Aaron's contractually obligated itself to pay overtime compensation to Jewell and the opt-ins for all hours worked in excess of forty hours in a workweek. Aaron's breached this obligation by failing to pay Jewell and the opt-ins for meal periods during which they performed work," (Compl. ¶ 39).

The Eleventh Circuit has recognized that "claims for breach of contract are peculiarly driven by the terms of the parties' agreement, and common questions rarely will predominate if the relevant terms vary in substance among the

Case 1:12-cv-01256-TWT Document 37 Filed 04/29/14 Page 12 of 15

contracts." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) (noting that form contracts, executed under like conditions by all class members, best facilitate class treatment) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) (reversing certification of breach of contract action involving numerous different contracts, and observing that "this is not a situation in which all plaintiffs signed the same form contract")). Absent ideal conditions such as form contracts, executed under like conditions by all class members, and particularly in cases involving numerous or different contracts, the Eleventh Circuit has "hesita[ted] to conclude that common issues of fact predominate, [and] required at the threshold that all of the subject contracts be 'materially similar.'" *Id.* (citations omitted). Even where the plaintiffs' breach of contract claims involve some relatively simple common issues of law and possibly some common issues of fact or related law, certification as a class is not appropriate where individualized issues of fact predominate. *Id.* at 1267.

Plaintiff's Proposed Amended and Supplemental Complaint does not explain the nature of the "contractual obligations" Aaron's owed to Plaintiff, i.e., whether there was an express written contract. In his Reply brief, Plaintiff contends that "the proposed pleading establishes an oral contract of at-will employment, whereby wages consist of a regular rate of pay plus time-and-half for all hours worked over 40 in a workweek." (Reply at 35-36.) Plaintiff relies on Aaron's "employment policies provid[ing] for overtime compensation at a

specified formula to all hourly store employees, to be paid for all hours worked in excess of forty hours in a workweek. Jewell and the opt-ins performed their work under the terms and conditions established by those policies, including the promise of overtime compensation." (*Id.* at 37.)

In *Babineau v. Fed. Exp. Corp.*, a case strikingly similar to the instant case, the Eleventh Circuit affirmed the district court's denial of class certification of breach of contract claims asserted by couriers, courier/handlers, service agents, and other non-exempt employees who claimed that FedEx breached their employment contracts by failing to pay for time worked during intervals between clocking in and out and unpaid breaks. *Babineau*, 576 F.3d at 1193-94. Plaintiffs in *Babineau* asserted that a common question of fact existed as to whether FedEx had a policy requiring employees to work outside their scheduled shifts in order to complete their assigned tasks and that proving the existence of such a policy would establish breach of contract liability on a class-wide basis. *Id.* at 1193. Relying on its prior holding that "proving the existence of a general policy may not be sufficient to establish that a defendant is liable to individual class members," the Court found that proving that FedEx had such a policy would not predominate over individualized inquiries necessary to determine the amount of time actually spent working during an unpaid break. *Id.* at 1193-94; *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d at 1273 (finding that even if class claims based on policy statements contained in employment manuals could be construed as a binding contract, which arguably could create common issues of

Case 1:23-cv-05702-TWT Document 20-2 Filed 04/29/24 Page 15 of 16

fact and law, class would still lack predominance based on each plaintiffs' understanding of the compensation policy and procedure).

The same can be said of the claims Plaintiff attempts to assert here. "[C]ommon issues will not predominate over individual questions if, 'as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Babineau*, 576 F.3d at 1191. In the instant case, the law of 32 potential states would have to be considered in combination with the varied factual circumstances of potentially hundreds of claimants. Under these circumstances, the Court cannot perceive how Plaintiff could properly establish the predominance in legal issues or relevant facts necessary ultimately to support class certification of the putative class's state law claims.

## III. Conclusion

The Court does not desire to give Plaintiff an illusory promise as to the viability of any classwide breach of contract and unjust enrichment claims by granting leave to amend, only to later deny class certification under Rule 23, and therefore further delay any of the Plaintiffs' ability to seek relief in another forum. Opt-in Plaintiffs who may be subject to the MCA exemption for some or all of their time employed by Aaron's should file their individual claims in the proper forum if they so desire. Accordingly, because Plaintiff's amendment would be futile under the circumstances presented here, the Court **DENIES** Plaintiff's

Renewed Motion for Leave to File Amended and Supplemental Complaint [Doc. 164].

**IT IS SO ORDERED** this 29th day of April, 2014.

**Amy Totenberg**
**United States District Judge**