IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LUKAS GOODYEAR, individually and on behalf of all others similarly situated,

    Plaintiff,

    v.

DELTA AIR LINES, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:23-CV-5712-TWT

**OPINION AND ORDER**

This is a putative breach of contract class action. It is before the Court on Plaintiff Lukas Goodyear's Motion to Exclude [Doc. 61] and Motion to Certify Class [Doc. 96] as well as Defendant Delta Air Lines, Inc's ("Delta") Motion for Summary Judgment [Doc. 95]. The Court GRANTS Delta's Motion for Summary Judgment [Doc. 95], DENIES as moot Goodyear's Motion to Exclude [Doc. 61], and DENIES as moot Goodyear's Motion to Certify Class [Doc. 96].

**I.    Background**

This case arises from an overtime wage dispute. Plaintiff Lukas Goodyear was employed by Defendant Delta Air Lines, Inc. from 1999 to 2023. (Def.'s Statement of Undisputed Material Facts ¶¶ 12, 55, 98 [Doc 95-2].) He alleges that Delta breached a contract that provides for overtime pay. (Compl. ¶¶ 67–68 [Doc. 1].) It is undisputed that Delta, as an air carrier, is exempt from the overtime requirements of the Fair Labor Standards Act. (Def.'s Statement

of Undisputed Material Facts ¶ 1.)

The source of the issue is a change that Delta made to its overtime pay calculations. For most of Goodyear's employment, supervisors in Goodyear's Crew Tracking department manually reported the overtime hours of their employees. (*Id.* ¶¶ 42, 60, 62–64.) In 2021, Delta conducted an audit of the Crew Tracking department and determined that overtime hours in that department had been calculated inaccurately under the manual process. (*Id.* ¶¶ 67–69.) Later that year, Delta announced that it would transition the department to a system that automatically calculates overtime hours based on set parameters, effective March 2022. (*Id.* ¶¶ 74–76, 88.) This transition was not abnormal within Delta, as the company had been transitioning other departments from the manual system to the automated system since 2016. (*Id.* ¶ 40; *see also id.* ¶ 42 ("[B]y 2022, Crew Tracking was one of the last remaining departments to transition.").)

The automated system calculates overtime hours differently from how the Crew Tracking department's supervisors had previously calculated them. The relevant issue is how overtime is calculated when employees swap shifts. When two employees swap shifts, the act of covering another employee's shift is called "swapping on," and the act of getting a scheduled shift covered is called "swapping off." (*Id.* ¶ 28.) Under the manual reporting system, the Crew Tracking supervisors reported hours as overtime anytime an employee worked

on a scheduled day off during a given work week *and* the employee's previously scheduled hours had been worked by that employee or a colleague. (*See id.* ¶¶ 64, 70, 76, 78; Pl.'s Statement of Additional Material Facts ¶ 17 [Doc. 109-2].) Under the automated system, overtime hours are logged anytime an employee worked on a scheduled day off during a given work week *and* the employee's previously scheduled hours had been worked by that employee (and not any other colleague). (*See* Def.'s Statement of Undisputed Material Facts ¶¶ 76, 78, 81.)

In advance of the transition to the automated system, Delta provided various resources about the change to its employees and held town hall meetings. (*Id.* ¶¶ 79, 83, 86.) One of the resources included the following instruction:

> If swapping off one or more shifts during a single pay period without swapping on an equal number of shifts during the same pay period, your paycheck will be less because you will only be paid for hours worked during the pay period[.] *When you swap off a shift and pick up a shift* (from the weekly or operational extra time) *during the same scheduled work week* (first scheduled day of work until last scheduled off day)*, you will not be paid OT/DT unless you exceed your original hours as scheduled prior to the swap off*[.]

(*Id.* ¶ 80 (emphasis added).[1])

Goodyear contends that Delta's change to overtime pay breached an existing employment document titled "Hours of Work, Overtime and Shift Differential (Ground, Noncontract Employees)" ("HOW"), which he alleges is a contract. The HOW outlines several Delta policies, including its policy on overtime and swaps. It defines "weekly overtime" for employees like Goodyear as "the time required to be worked on scheduled days off, *provided the scheduled days have been worked during the preceding work period.*" (Pl.'s Resp. Br. to Def.'s Mot. for Summ. J., Ex. 1, at 14 (emphasis added) [Doc. 109-4].[2]) It further states: "Swaps are designed to provide front-line employees with increased flexibility to swap shifts. . . . *Swaps do not count*

---

[1] Delta refers to this document as a PowerPoint presentation. Goodyear appears to deny that Delta provided any PowerPoint presentations and notes that "the cited evidence does not establish that Delta presented or provided this as a PowerPoint presentation." (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 80. *But see id.* ¶ 85 (admitting elsewhere that Goodyear did receive a PowerPoint presentation as part of Delta's resources on the change to an automatic system).) He also notes that Delta did not identify the document in Plaintiff's Interrogatory No. 15, in which Delta was asked for documents of the same kind. (Pl.'s Statement of Additional Material Facts ¶ 27.) Delta responds that it identified the "PowerPoint" in its interrogatory response but erroneously cited it "under its internal control number DLT_7574253_00000079, rather than its Bates number, DELTA_LG_00000062." (Def.'s Resp. to Pl.'s Statement of Additional Material Facts ¶ 27[ Doc. 117-1].) Seeing as Goodyear did not formally object to the admissibility of the evidence and appears to have nonetheless been aware of the document by 2023, the Court will consider the evidence for purposes of the present motions. (*See* Fortin Decl. ¶ 7; Reply Br. in Supp. of Def.'s Mot. for Summ. J., Ex. 1 [Doc. 117-3].)

[2] The pagination of this exhibit reflects the PDF pagination.

4

*towards OT threshold* so swapping should never put an employee into an overtime eligible situation." (*Id.* at 6 (emphasis added).) Relying on the overtime definition, Goodyear alleges that Delta breached the HOW when it decided to withhold overtime wages until an employee had worked all hours for which he or she was previously scheduled. (Compl. ¶¶ 67–68.) He argues that the HOW requires swap-on shifts to be credited as overtime whenever an employee works on a scheduled day off and the previously scheduled days "have been worked" at all, whether by the originally scheduled employee or by other employees. (Pl.'s Resp. Br. to Def.'s Mot. for Summ. J., at 3–4 [Doc. 109].)

Goodyear filed suit on behalf of himself and members of a putative class of other Delta employees. His Complaint contains two claims: breach of contract (Count I) and unjust enrichment (Count II). Three motions are before the Court. Delta presently moves for summary judgment and to exclude Goodyear's expert report, and Goodyear moves for class certification.

## II.  Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary

5

judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.  Discussion

#### A. Breach of Contract (Count I)

##### 1. Existence of a Contract

While an at-will employee does not have a contractual right to remain employed, "an at-will employment relationship can give rise to certain contractual rights." *Shelnutt v. Mayor*, 333 Ga. App. 446, 450 (2015). An employee manual generally does not establish any contractual rights, but it may under certain circumstances. *O'Connor v. Fulton County*, 302 Ga. 70, 58–59 (2017). Specifically, an employee manual "of which an employee is aware" that sets out the terms for additional compensation "may amount to a binding contract" between the employer and the employee. *Id.* at 59 (citations omitted). Georgia courts treat such additional compensation policies as offers by employers that are implicitly accepted when their at-will employees choose to remain employed. *Fulton-DeKalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595, 596–97 (1992) (quoting *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (1981)). Examples of contractually binding policies are those that provide for

compensation in the form of severance pay, disability benefits, and paid vacation time. *Fletcher*, 160 Ga. App. at 695 (severance pay); *Metzger*, 203 Ga. App. at 595–97 (disability benefits); *Shannon v. Huntley's Jiffy Stores, Inc.*, 174 Ga. App. 125, 126 (1985) (vacation pay). But where an employee manual merely "set[s] forth certain policies and information concerning employment" and does not provide for additional compensation, it is not a contract. *See Burgess v. Decatur Fed. Sav. & Loan Ass'n*, 178 Ga. App. 787, 787 (1986) (holding that employment termination provisions in an employee manual were not contractually binding); *Jones v. Chatham County*, 223 Ga. App. 455, 459 (1996) (same).

Not all mentions of compensation in an employee manual amount to an additional compensation policy. For example, in *O'Connor*, the Georgia Supreme Court determined that the policy at issue "d[id] not amount to a promise of future compensation" because its focus was the "administration" of "temporary appointments" and not additional compensation. *O'Connor*, 302 Ga. at 73. The Court noted that the references to pay were "dependent upon and collateral to" the topic of an employee returning to a prior position after a temporary appointment. *Id.* at 72. In *Ellison v. DeKalb County*, 236 Ga. App. 185 (1999), the Georgia Court of Appeals considered an employee manual that outlined the eligibility requirements for a promotion. *Id.* at 185–86. There, the plaintiff argued that his employer violated the manual because it relied on the

7

stricter eligibility requirements in a separate document rather than the requirements in the manual. *Id.* at 186. Although pay may be related to a promotion, the court held that the manual's promotion policy was not a contract, as it was "merely [ ] a statement of certain policies and information concerning employment" and not an "additional compensation" plan. *Id.* (citation modified). Lastly, in *Transport Workers Union of America v. Cherokee County School District*, 2008 WL 11405993 (N.D. Ga. Feb. 27, 2008), the plaintiff bus drivers did not sign a written employment agreement. *Id.* at *1. Rather, they were provided with a document with an "hourly rate," "daily rate" and "annual salary" based on whether the drivers were categorized as "[Four] Hours Per Day" or "[Five] Hours Per Day." *Id.* The plaintiffs alleged their employer underpaid them when it paid them a fixed annual salary rather than the hourly rate. *Id.* at *5. The hourly rate would have resulted in higher pay because the drivers sometimes worked more than the four or five hours listed on the schedule. *Id.* The Georgia Court of Appeals held that "[t]he presence of pay schedules titled 'Four Hours Per Day' and 'Five Hours Per Day' and the use of the words 'Hourly Rate'" did not by themselves constitute a promise to pay the drivers by the hour. *Id.* at *7; *see also id.* (finding that the defendant "had the flexibility to change their routes and pay schedules at any time" as an "at-will employer").

8

In its Motion for Summary Judgment, Delta argues that the HOW is not a contract. It argues that the HOW is an employee manual merely used to "inform," not establish contractual rights. (Br. in Supp. of Def.'s Mot. for Summ. J., at 14.) It also argues that Goodyear cannot show he was aware of the overtime pay provisions, a prerequisite to the formation of any contract. (*Id.*) Specifically, Delta explains that "employees were told they could find Delta's policies on the intranet," (*id.* at 4), but no one "affirmatively directed [Goodyear] to HOW, or told him that it governed his pay, until he 'raised concerns about his compensation,'" (Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 6 [Doc. 117]). In this case, it is not necessary to determine if the HOW created a binding contract.

### 2. Change in Terms of Employment

Even if Goodyear was contractually owed overtime pay by means of the HOW, it does not mean that Delta was forever bound by the terms of the HOW. Instead, as an at-will employer, Delta was free to revise and re-interpret its policies as it saw fit and without the consent of its employees. *Stover v. Candle Corp. of Am.*, 238 Ga. App. 657, 659 (1999); *Johnson v. Metro. Atlanta Rapid Transit Auth.*, 207 Ga. App. 869, 870 (1993) (citing *Taylor v. Amisub (McIntosh Trail Reg. Med. Ctr.), Inc.*, 186 Ga. App. 834, 835 (1988)). While employers must provide notice of a change in policy and cannot apply the change retroactively, *Cox v. Erwin*, 246 Ga. App. 439, 440 (2000), Delta met that

standard here.

In advance of the change, Delta circulated multiple resources to the Crew Tracking department regarding their transition to an automated pay system, which included a document outlining the corresponding change in overtime pay. (Def.'s Statement of Undisputed Material Facts ¶ 80.) Goodyear appears to deny that the document was circulated to employees (at all and in PowerPoint format), (*see* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 80 [Doc. 109-1]), but he cannot deny its existence or that it is clearly intended as information for his department. Regardless, the available evidence indicates that Goodyear was made aware of the change to overtime pay prior to the system migration. In December 2021, he stated in an "Ethics Report and Notice" about the HOW that Delta "created a rule that if a swap is completed, any extra time on an off day will be paid as straight time to bring the weekly threshold up to the originally scheduled hours prior to paying overtime." (Def.'s Statement of Undisputed Material Facts ¶ 92; *see also* Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 92 (noting that Goodyear stated in the same document his belief that the new policy "contravenes" the HOW).)

Despite receiving notice that Delta was changing its overtime pay policy within his department, Goodyear chose to remain employed with Delta after the change went into effect. (Def.'s Statement of Undisputed Material Facts

10

¶ 93.) In the employment context, his decision to remain employed constituted acceptance of the new terms. *Stover*, 238 Ga. App. at 659; *Johnson*, 207 Ga. App. at 870 ("[B]ecause [the plaintiff's] employment was terminable at will, [the employer] was authorized to alter the terms of his employment." (citation omitted)); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1374 (11th Cir. 2005) ("Georgia courts have held that an employee can accept new terms of employment of which the employee is aware by remaining in employment."). That Goodyear disagreed with the change and found it inconsistent with his interpretation of the HOW is of no significance. An at-will employer need not obtain consent from its employees to enforce a policy change. *Stover*, 238 Ga. App. at 659. As Delta points out, "[t]his is consistent with an employer's right to terminate an at-will employee at any time and rehire him under different conditions." (Br. in Supp. of Def.'s Mot. for Summ. J., at 10 [Doc. 95-1].)

The Court does not wade into the debate of whether the new policy contradicts the HOW's language. Even if Goodyear was correct that it did (on which the Court does not opine), Delta was not required to update its written policies to reflect this change. Delta notified its employees about the change and did not retroactively enforce the change. That is all that the law appears to require when an at-will employer implements a change in policy. It is not inconceivable that an employer's policies may be expressed across various

11

documents and in various forms, and the law does not even require a written policy to exist at all. Goodyear cites no case law holding that parties must amend the language of a written contract in order to later modify it; in fact, contract law expressly contemplates the contrary. This is the case despite the fact that Delta continued to refer employees such as Goodyear to the policy after it transitioned Goodyear's department to the new overtime policy. *See Ellison*, 236 Ga. App. at 186–87 (acknowledging that the employer did not modify its written employee handbook on promotions, despite the fact that a separate document had changed the promotion eligibility standards). Of course, considering that Delta believed the change would actually bring the Crew Tracking department in line with the HOW, Delta's decision to leave the written policy in place made sense from the company's perspective.

For these reasons, the Court grants Delta's Motion for Summary Judgment as to Count I. Delta modified the terms of Goodyear's employment, and Goodyear accepted those terms when he continued his employment with Delta. Therefore, there can be no breach of contract.

### B. Unjust Enrichment (Count II)

Goodyear alleges that Delta "unjustly enriche[d] itself" at his expense when it "fail[ed] to pay overtime even though the employee's scheduled time has been worked and Delta has received employee labor for the entirety of that scheduled time." (Compl. ¶ 72.) A claim for unjust enrichment lies where

(1) "the defendant induced or encouraged the plaintiff to provide something of value to the defendant"; (2) "the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof"; and (3) "the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it." *Campbell v. Ailion*, 338 Ga. App. 382, 387 (2016).

Delta is entitled to summary judgment on this unjust enrichment claim. Having already found that Delta notified Goodyear of the change in overtime pay calculations and that Goodyear agreed to the change by remaining employed, Goodyear was not owed more and should not have "expect[ed]" more. *See id.* Goodyear was scheduled to work a certain number of hours each work period, and Delta paid Goodyear for those scheduled hours in accordance with his agreed upon base pay. Delta made Goodyear aware that, if he provided the benefit of working shifts in excess of his scheduled amount, then he would be rewarded with overtime pay. The Court agrees with Delta that Goodyear's cited cases are inapposite. *See GunBroker.com, LLC v. Tenor Cap. Partners, LLC*, 2021 WL 5113200, at *17 (N.D. Ga. Nov. 3, 2021) (denying summary judgment on an unjust enrichment claim because the defendant "induced" the plaintiff to "do additional work" that the defendant did not compensate); *Reva, Inc. v. Humana Health Benefit Plan of La., Inc.*, 2018 WL 1701969, at *3 (S.D. Fla. Mar. 19, 2018) (allowing an unjust enrichment claim to proceed at the

motion to dismiss stage where the plaintiff had "minimally" alleged a claim and "discovery might reveal evidence supporting" the claim). Delta did not unjustly enrich itself merely because it paid overtime only once Goodyear worked his originally scheduled hours. Therefore, the Court grants summary judgment on Goodyear's unjust enrichment claim. Having granted summary judgment on both Counts I and II, the Court denies as moot Delta's Motion to Exclude and Goodyear's Motion to Certify Class.

## IV.  Conclusion

The Court GRANTS Delta's Motion for Summary Judgment [Doc. 95], DENIES as moot Goodyear's Motion to Exclude [Doc. 61] and Motion to Certify Class [Doc. 96]. The Clerk is directed to enter judgment in favor of the Defendant, and to close the case.

SO ORDERED, this ___5th___ day of March, 2026.

```
                                    /s/ Thomas W. Thrash
                                    THOMAS W. THRASH, JR.
                                    United States District Judge
```